## KEMNA v INDUSTRIAL COMMISSION

Ohio Common Pleas, Hamilton Co

Decided April 4, 1938

Bettinger, Schmitt & Kreis Cincinnati, for plaintiff.

Herbert S. Duffy, Attorney General, Earl Wagner and R. R. Zurmehly, Assts., Attorney General, Columbus for defendant.

## OPINION

By DEMPSEY, J.

This matter is before this court, on appeal from the Industrial Commission of Ohio, which, after rehearing under the Workmen's Compensation Act, denied the plaintiff's claim, as widow, to participate in the State Insurance Fund, on the ground that the death of her deceased husband, Henry Kemna, was not "due to any accidental injury, sustained in the course of his employment." The case was submitted to the court without a jury.

Said Henry Kemna, plaintiff's deceased husband, had been an employee of The Cincinnati Coffin Company for some fifteen years prior to his death on July 26, 1934. For the first four or five years of his connection with the firm, he was a regular night watchman. Then, at his request, he was given day work, as a handyman in the press room, which also involved doing odd jobs and running errands throughout the plant. Moreover, whenever a regular night watchman wanted to take a night off, deceased would substitute for him.

On July 25, 1934, Cincinnati was in the midst of an extraordinary and severe "heat spell." which had set in some four or five days before, and during which the official temperatures, in late afternoon, exceeded 100 degrees F. On that day deceased reported for work at the usual hour, between 7:30 and 8:00 A. M. He was instructed to get out the hose and sprinkle the cement sidewalk surrounding the plant, which occupies the major portion of a city block. He was engaged at that employment steadily until about 10 A. M., 'at which time he was directed to wrap up the hose and go

home to rest, as he was to report back at 6 P. M. that night to take the place of the regular night watchman, who would be off duty. Decedent complied with these orders and went to his home on Sherman avenue, in the closely built up west end basin of Cincinnati, not far from the plant. The temperatures in that area of the city are from four to five degrees higher than shown on the official weather reports, which readings are taken at the Abbe Meteorological Observatory, located in Clifton, one of the hilltop suburbs of Cincinnati. For that day, July 25, 1934, the official temperatures were as follows:

| | |
|---|---|
| 9 A. M. | 83 degrees F. |
| 10 A. M. | 96 degrees F. |
| 12 Noon | 103 degrees F. |
| 2 P. M. | 107 degrees F. |
| 4 P. M. | 98 degrees F. |
| 6 P. M. | 93 degress F. |
| 8 P. M. | 90 degress F. |
| 10 P. M. | 87 degress F. |
| Midnight | 86 degrees F. |

Said Henry Kemna reported back for duty as such night watchman at 6 P. M., on said July 25, 1934, and started to make the rounds. He had, in that capacity to cover, from cellar to top floor, the ten buildings which comprised the plant; two of which were only one story high; eight of which were six stories high, and under four of which there was a basement. He had to patrol in the period of one hour a distance of some 9,500 feet, which is close to two miles, through these ten buildings, up and down some twenty-four flights of stairs, and had to register at twenty-six clock stations. There was a rest period of thirty minutes allowed between the rounds. The decedent had made two complete circuits and all of the third one except two of the clock stations, when he was overcome. That was just prior to 10 P. M. An investigation, being made by reason of his failure to signal the last two call boxes, discovered him lying unconscious on the second floor of building No 3, at the foot of the stairs to the floor above. On said third floor, in said building No. 3, was the hardware casting room, containing ten ovens or kettles for melting metal, and which during working hours was always of a temperature much in excess of 100 degrees F. Also, on the second floor of said building, and about thirty feet away from the spot where decedent was found, was the header room, into which the steam was piped from the boilers and then distributed throughout the plant for power and heating purposes. At that season only the pres-

sure steam, or power line was in operation. This room, when the steam was on, had continuously a temperature far in excess of 100 degress F. Furthermore, during the actual period of operation, by reason of the general use of steam throughout for power purposes, the prevailing temperature in the plant was in the neighborhood of 100 degrees F. However at 6 P. M. each working day, the fires were banked and at 8 P. M., the steam pressure was cut off, thus giving rise to a cooling off of the plant. Decedent had worked under these conditions during the fifteen or more years that he was in the company's service.

Said building No. 3, wherein decedent was overcome, was an interior unit of the plant, not opening out upon a public street, but upon area-ways between it and the other buildings of the plant ensemble. While the window openings contained no frames, sashes or panes, they were closed at night, and at the time of decedent's death, with sheet iron shutters.

When decedent was discovered to be unconscious, first aid was rendered, and then he was sent to the hospital. There his attending physician diagnosed his trouble as heat stroke, inasmuch as he was cyanotic, frothing at the mouth, and had a body temperature of 108 degrees F. He died, without regaining consciousness, at 2 A. M., on July 26, 1934. He was then about seventy-eight years of age. The hospital records and the death certificate showed the cause of death to have been heat exhaustion in conjunction with myocarditis. At all events, whether we call it heat stroke or heat exhaustion, Henry Kemna died from the effect of extreme external heat upon his bodily tissues, nerves and organs, and from the resultant inability to sufficiently eliminate his own body heat.

On that state of facts the Industrial Commission has taken the position that there is no compensible claim available to Henry Kemna's widow, the plaintiff, on the ground that his death was not the result of an injury, within the meaning of the Workmen's Compensation Act; was not accidental in nature; and did not arise out of the conditions of decedent's employment.

First, on the question of injury; there was in this case no external trauma; no blow, cut or other apparent violence from the outside. Such, however, is not a necessary condition precedent to recovery of compensation under the Ohio Act. **Industrial Commission v Tolson, 37 Oh Ap 282; Industrial Commission v Smith, 45 Oh Ap 362; Davis v American Rolling Mill Co, 54**

Oh Ap 298, 7 OO 443; **Cornett v Industrial Commission, 20 Abs 364; Industrial Commission v Palmer, 126 Oh St 251; Industrial Commission v Bartholome, 128 Oh St 13.**

Where the employee, while engaged in the performance of the duties of his job, is subjected to an unusual condition, destructive in nature, and definite as to time and place, which causes him physical damage, he has suffered an injury, within the terms of the law, even though there be no mark of such hurt on his body, or any other indication exterior thereto. **Castings Co v McNeeley, 21 Oh Ap 148; Industrial Commission v Hineline, 47 Oh Ap 50; Esmonde v Locomotive Works 51 Oh Ap 454, 5 OO 415; Industrial Commission v Polcen, 121 Oh St 377.**

Here the decedent was overcome while at work in the plant, in a place where his job then compelled him to be, and under conditions of employment then and there quite out of the ordinary as to temperature; and potential of harm to the human system. The medical testimony shows that in this case the decedent's system was subjected to such high external temperature, while undergoing exertion, that it could not adequately dispel the body heat produced by its own organic functioning; that, thereby, its internal temperature was built up to 108 degrees F.; and that temperatures within the body in excess of 106 degrees F., cause definite permanent damage to the tissues, organs and nerves, such as would be evident to surgical or autoptic examination. Such was the situation, and we have no hesitancy in holding that the decedent suffered an injury within the meaning of the Workmen's Compensation Act.

Second: Was it accidental in nature? Although the act does not so specifically state, the courts have held that an injury, to be compensable under the Ohio law, must be the result of accident. **Industrial Commission v Franken. 126 Oh St 299.**

That is, the harm must arise out of an unforeseen, unintended event; without any volition in that direction on the part of the employee. **Spicer Mfg. Co. v Tucker, 127 Oh St 421; Industrial Commission v Luger, 54 Oh Ap 148, 7 OO 466.**

Further, it must not have been caused by disease. It must be the result of the "tear" rather than the "wear" of the employment. **Industrial Commission v Cross, 104**

Oh St 561; Industrial Commission v Middleton, 126 Oh St 212; Industrial Commission v Bartholome, 128 Oh St 17.

Under these criteria, decedent's injury was certainly accidental. There is no evidence at all that the damage had arisen out of a foreseen situation, or that any planned action of decedent contributed thereto; neither is there anything in the record that points to an existing disease as the causation.

On this point, taking into account the extent of decedent's efforts within his employment on the day of his prostration, we find the decision of the Court of Appeals in Ford Motor Co. v Hunter, 50 Oh Ap 547; 4 OO 324; 19 Abs 616, supportive of our holding that this is a case of accidental injury under the act, rather than to the contrary.

Third: The decisive point in this case, in view of the foregoing, is whether or not decedent's fatal injury was incurred by reason of his employment. Simply to show that the employee has been accidentally hurt while on the job is not enough to make the injury compensable. It must also appear by proper evidence that the employment, its conditions, activities and environments were in the line of causation. Fassig v State ex 95 Oh St 232; Industrial Commission v Weygandt, 102 Oh St 1; Manufacturing Co. v Wrobel, 125 Oh St 265.

Where it is clear that the conditions and surroundings of the place of employment have some causal connection with the injury, it is compensable as arising out of the employment. East Ohio Gass Co. v Coe, 42 Oh Ap 334; Industrial Commission v Nelson, 127 Oh St 41;

That would appear to be the situation in this matter, unless altered by the fact that the "heated spell," an act of God, was an important factor, contributing to decedent's damage. The simple involvement of an act of God, a force of nature, in and of itself, is not decisive one way or the other on the question of compensability. If the damage is caused by an act of God, even though suffered by the employee while on the job, but under circumstances which show that the employee was then merely subject to the same risk of injury as was active against members of the public generally, the harm is not attributable to the employement and is not compensable. Sianina v Industrial Commission, 117 Oh St 329; Johnson v Industrial Commission, 49 Oh Ap 419; 3 OO 286; Industrial Commission v Baker, 127 Oh St 345.

On the other hand, even where an act of God, a force of nature, is one of the causative elements of the damage; if it appears that the activities and surroundings of the employment subjected the workman to a particular hazard from such act of God, force of nature, greater than what was then operative against other persons in the community, a causal connection between the employment and the injury is established, and the case is compensable under the Workmen's Compensation Act. American Shipbuilding Co. v Michalski, 30 Oh Ap 80; Industrial Commission v Laraway, 46 Oh Ap 168; Industrial Commission v Kovacs, 10 Abs 248; Industrial Commission v Carden, 129 Oh St 344, 2 OO 334.

In this matter the decedent's physical damage resulted from the harmful effects of the then state of the elements, working in combination with the required activities and incidental hazards of the employment. One was as much a part of the proximate cause as was the other.

Accordingly, we hold that Henry Kemna's death was the result of an accidental injury received in the course of and arising from his employment, and that his widow, the plaintiff herein, is entitled to participate in, and receive compensation from, the State Industrial Insurance Fund.